**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO.  10-21153-CV-KING

MITCHELL GROUP USA LLC, and
GAPARDIS HEALTH AND BEAUTY,
INC.

      Plaintiffs,

v.

XTREME TOOLS INTERNATIONAL,
INC., et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUGMENT

THIS MATTER comes before the Court upon Plaintiffs' Motion for Summary Judgment (DE #33).  Since filing their Complaint (DE #1) on April 9, 2010 against over 20 Defendants, Plaintiffs have entered into stipulated settlements with most of those Defendants.  And, since filing their Motion for Summary Judgment on December 13, 2010, Plaintiffs have entered into more stipulated settlements.  As such, the only Defendants remaining before this Court are Xtreme Tools International, Inc., Ali Mithavayani, Mark Beauty, Inc., and Moshamed Niru (collectively, "Defendants").

Plaintiffs claim that summary judgment against Defendants is appropriate because there are no genuine issues of material fact over whether they are liable for violations of the Lanham Act, 15 U.S.C. § 1114 *et seq.*[1]  They therefore request damages under both the Lanham Act and

---

[1] The only claims remaining before this Court, after numerous stipulated settlements both before and after the filing of Plaintiffs' Motion for Summary Judgment, are found in the following counts listed in the Complaint: Count I (Trademark Infringement and Counterfeiting Against Xtreme Tools International, Inc. and Ali P. Mithavayani); Count VI (Trademark Infringement and Counterfeiting Against Mark Beauty, Inc. and Moshamed Niru); and Count XII (Florida Common Law Unjust Enrichment) (DE #1).

common law.    Defendants contend in Response (DE #35) that summary judgment is inappropriate because there is conflicting evidence over whether Defendants intentionally violated the Lanham Act, or should be liable for unfair competition.

Upon consideration of the parties' arguments and the legal authorities cited therein, the Court finds that there are no genuine issues of material fact preventing summary judgment as to Defendants' liability.  However, because the record is devoid of evidence as to the breadth of any infringement, the Court declines to award the damages amount requested by Plaintiffs. Individualized orders of Final Judgment will therefore be entered separately by this Court.

## I.  Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all

inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

## II. Undisputed Facts

The record before the Court reflects that Plaintiff Mitchell Group USA LLC and Gapardis Health and Beauty, Inc. are wholesale distributors of certain types of cosmetic products, over some of which they own trademarks and over others for which they are the exclusive distributors. As it concerns this dispute, the following cosmetic products are implicated: Omic, Omic Plus, Neoprosone, Lemonvate, and Carotis. Mitchell Group owns trademarks over the first three products, while Gapardis own trademarks over the remaining two. Plaintiffs' cosmetic products are marketed to individuals of African and Caribbean descent through a network of sales representatives and wholesalers. Over 250 stores within Florida carry Plaintiffs' products, while approximately 6,000 retail stores nationwide do the same.

Since an undefined time period, Defendant Xtreme Tools International, Inc., doing business as Xtreme Beauty International, has purchased the described products from Plaintiffs. Xtreme Beauty is therefore familiar with the packaging in which those products are sold. However, according to an undisputed affidavit produced by Plaintiffs, certain counterfeit products were found within Xtreme Beauty's inventory since at least August 2009. The record reflects that these products were not purchased from Plaintiffs, but instead from third parties.[2]

---

[2] Plaintiffs claim that the third parties from whom Defendant Xtreme Tools purchased the counterfeit products were known to Plaintiffs to be suppliers of counterfeit products. Indeed, Plaintiffs have previously litigated against both third-party suppliers from whom Defendant Xtreme purchased the counterfeit products. However, as there is no evidence that the status of the third parties as counterfeiters was ever known by or shared with Defendants, the Court disregards this consideration.

Moreover, certain retail stores purchased an undisclosed quantity of counterfeit products from Xtreme Beauty. In support, Plaintiffs rely on certain invoices from Xtreme Beauty to the remaining Defendant retail stores – stores like Mark Beauty Supply. Specifically, these invoices reflect the sale of the trademarked cosmetic products from Xtreme Beauty to the named retail stores. While the invoices reflect the sale of those trademarked products, however, Plaintiffs have introduced no evidence as to the percentage of counterfeit products contained within those shipments.

To support an award for damages under the pertinent statute, Plaintiffs have submitted, among other things, an affidavit from Michel Farah, indicating that Plaintiffs have lost over $500,000 each year due to counterfeiting of their trademarked cosmetics. (DE #33-4 ¶34). However, Mr. Farah admits that "it is not possible to quantify with specificity the monetary impact of the Defendants' counterfeiting." As such, Plaintiffs request statutory damages rather than actual damages.

### III.  Discussion

As noted by the Supreme Court in *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952), the Lanham Act's express intent is to

> to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such comme(r)ce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations." *Id.* (citing 15 U.S.C. § 1127).

As it applies here, infringement of the Lanham Act occurs where "[a]ny person who shall, in commerce, without the consent of the registrant –

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of

4

a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution or advertising of goods or services in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive

shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided in this chapter. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

As noted above, a nonmoving party has an obligation to come forward with evidence that demonstrates the existence of triable fact. *See Chanel*, 931 F.2d at 1477. However, Defendants have failed to make any such showing here, and therefore, based on the evidence submitted by Plaintiffs, the Court finds that summary judgment as to liability is appropriately granted to Plaintiffs. Nonetheless, due to the speculative nature of Plaintiffs' damages and the severity of the infringements at issue, the Court declines to award the damages requested by Plaintiffs, and instead awards a smaller amount of damages in addition to injunctive relief.

A. Liability of Defendants for Trademark Infringement

Plaintiffs correctly note that the Lanham Act, 15 U.S.C. 1114 *et seq.* prohibits trademark infringement. The purpose of such a prohibition is to discourage, where a federal trademark has been obtained, the unauthorized reproduction, counterfeit, or copy of recognized trademarks. 15 U.S.C. § 1114(1). To recover for this action, a plaintiff must establish each of the five prongs enunciated by the Eleventh Circuit in *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008): (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce,' (4) that the defendants used the mark 'in connection with the sale ... or advertising of any goods,' and (5) that the

defendants used the mark in a manner likely to confuse consumers. *Id.* at 1218 (quoting 15 U.S.C. § 1114(1)(a)).

Plaintiffs have provided sufficient evidence to support their claims against Defendants at to trademark infringement. First, a certificate of registration of a trademark is *prima facie* evidence of ownership. 15 U.S.C. § 1057(b). Plaintiffs have provided such certificates here, so the first element of the three-prong test is clearly satisfied. Additionally, as Michel Farah's affidavit is uncontested in that he observed certain of the Defendants selling counterfeited products, the second, third, and fourth prongs are also satisfied. Finally, there is a high likelihood that the counterfeit cosmetic products sold by Defendants were likely to cause confusion or deception in the marketplace. *See Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1179 (11th Cir. 1985) (noting seven factors that should be considered in adjudicating likelihood of confusion). Based on the type of trademark and the similarity of design between the original cosmetics and the counterfeits, this Court has no difficulty in finding that the counterfeit products were likely to cause confusion. *See also Fendi S.A.S. di Paloa v. Cosmetic World Ltd.*, 642 F. Supp. 1143, 1145 (S.D.N.Y. 1986) (noting purpose of counterfeits is to confuse the public). As such, Defendants – Xtreme Tools International, Inc., Ali Mithavayani, Mark Beauty, Inc., and Moshamed Niru – are liable for trademark infringement.[3]

B. Propriety of Damages and Attorneys' Fees

On review of the evidence provided by Plaintiffs, the Court finds that Plaintiffs' requested damages are unwarranted. Instead, the Court shall determine, by separate Order, more suitable damages, while also entering permanent injunction. Finally, the Court finds that attorneys' fees are unwarranted, as there has been no showing sufficient to demonstrate that this is an "exceptional" case as defined by 15 U.S.C. § 1117(a).

---

[3] In so finding, the Court necessarily finds Defendants liable for unfair competition as well. *John H. Harland Co. v. Clarke Checks*, 711 F.2d 966, 981 (11th Cir. 1983).

1.  Because there is no proof of actual damages, only statutory damages are permitted.

Plaintiffs have been unable to do more than speculate as to the actual damages they suffered as a result of Defendants' infringement.  Instead, they rely on Michel Farah's statement in his affidavit that, while "it is not possible to quantify with specificity the monetary impact od Defendants' counterfeiting .... [he] is able to estimate that the counterfeiting of these marks has cost the Plaintiffs' sales of one-half million dollars in" 2008 and 2009.  Mr. Farah bases this speculation only on the increasing sales of the products in question, without being able to point to any specific evidence in this case that would support such damages. As such, the Court finds that Plaintiffs cannot prove actual damages.

Nonetheless, the Lanham Act permits a plaintiff to seek statutory damages in lieu of actual damages. *Tiffany (NJ) Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y.2003)  In a counterfeiting case, a court may award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Statutory damages increase to not more than $1,000,000.00 per counterfeit mark if a defendant acts willfully. *Id.* § 1117(c)(2).  It must be noted, however, that the Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *Louis Vuitton Malletier and Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002); *Tiffany,* 282 F.Supp.2d at 124-25 ("The statute 'does not provide guidelines for courts to use in determining an appropriate award' and is only limited by what 'the court considers just.'") (internal citation omitted); *see also PetMed Express, Inc. v. MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1217 (S.D.Fla.2004) (citing to *Tiffany* and other cases for the proposition that district courts have wide discretion in awarding statutory damages damages).

Plaintiffs seek the following statutory damages from the remaining Defendants:

Xtreme Beauty and Ali Mithavayani, jointly and severally: $125,000
Mark Beauty and Moshamed Niru, jointly and severally: $15,000.[4]

As alluded to above, though, Plaintiffs have been unable to identify the actual quantity of goods

sold as counterfeited goods by Defendants. Instead, Plaintiffs rely upon invoices that they

contend indicate that certain counterfeit items were sold by Xtreme Beauty to the Defendant

retail stores. Additionally, Plaintiffs have filed affidavits with this Court in which certain of

Plaintiffs' agents observed trademark counterfeits. So, Hassan Alomari in his affidavit (DE #33-

5) notes that he observed one of the trademarked products, Neoprosone, being marketed at Mark

Beauty Supply, (DE #33-5 at ¶6). Similarly, Zaher Elkhatib's affidavit stated that he observed

counterfeited copies of all five cosmetic products on the shelves of Xtreme Beauty. (DE #33-4 at

¶7). However, there is no evidence before the Court as to how widespread the counterfeiting was

in any of these instances, nor of the severity: for example, not one of Plaintiffs' affidavits

identifies the number of counterfeit items observed by Plaintiffs' agent, instead alluding only

generally to the counterfeit items. Nor, aside from an inference of bad faith that Plaintiffs would

argue derives from the failure of Defendants to remove the counterfeit items from their shelves

on receipt of verbal notification, is there any evidence of bad faith on the part of Defendants.

As such, the Court finds that, in its statutory discretion, it must decline to award the

damages requested by Plaintiffs. The purpose of the judicial discretion to this statute is to permit

the Court to calibrate an appropriate damages award based on the culpability of the defendant.

Here, because there has been no showing of egregious culpability, the Court shall, by separate

Order, enter an award for damages that is more commensurate with the facts as proven by the

record.

---

[4] Plaintiffs' Motion for Summary Judgment initially also sought recovery against Defendants Megna Enterprises, Inc. Mohammed Anisur, Liberty City Beauty Supply, and Mohammed Latif. The parties have settled those claims, however, and they are therefore no longer before this Court. (DE #36, 39 ).

2. Injunctive relief is proper.

However, the Court does find that injunctive relief is appropriate here as to Defendants. Section 1125 of the Lanham Act provides that courts vested with authority to adjudicate cases such as these may grant injunctions. 15 U.S.C. § 1125. Just as in other contexts, a plaintiff must satisfy the elements for injunctive relief:

> 1) it suffered an irreparable injury;
>
> (2) remedies at law, such as monetary damages, are inadequate to compensate for the injury;
>
> (3) considering the balance of the hardships between plaintiff and defendants, a remedy in equity is warranted; and
>
> (4) the public interest would not be disserved by a permanent injunction.

*See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, the Court has no trouble finding that each of those elements has been satisfied by Plaintiffs, and permanent injunctive relief shall therefore issue, which will also be entered by separate Order of this Court.

3. No attorneys' fee award appropriate in this instance.

Finally, while Plaintiffs have contended that this matter is "exceptional" and they are therefore due their attorneys' fees, the Court cannot agree. 15 U.S.C. § 1117(a) provides that attorneys' fees may only be awarded where infringement has been "malicious, fraudulent, deliberate and willful." *Dieter v. B & H Indus.*, 880 F. 2d 322, 329 (11th Cir. 1989) (internal quotation omitted). Notwithstanding their assertions to the contrary, Plaintiffs have shown no evidence of willful or deliberate maliciousness on the part of Defendants. Instead, the only evidence before the Court as to the intent of the Defendants is the affidavit evidence of both parties, which indicates that 1) Plaintiffs' agents notified some of the Defendants a few months before suit of the counterfeit nature of certain of their products; and 2) that, upon the filing of Planitiffs' suit, Defendants pulled any possible counterfeit items off their shelves. The only

conclusion that can be drawn from the evidence in its entirety is that Defendants unknowingly purchased the counterfeit items from third-parties that were, unknown to them but known to Plaintiffs, merchants of such counterfeit items. Thus, such conduct does not support any attorneys' fees here.

### IV. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED**, and **DECREED** that:

1. Defendant's Motion for Summary Judgment (DE #33) be, and the same is, hereby **GRANTED in part**. While Plaintiff has demonstrated that violations of the Lanham Act have occurred, the Court will enter individualized damages award by separate Order of this Court.

2. Permanent injunctive relief will be **GRANTED**, but will also be issued by separate Order of this Court.

3. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 9th day of February, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc:

**Counsel for Plaintiff**
**David Michael Rogero**
2625 Ponce de Leon Boulevard
Suite 280
Coral Gables, FL 33134
305-441-0200
Fax: 460-4099
Email: dmrogero@dmrpa.com

**Counsel for Defendants**
**Eric C. Pinkard**
Anderson Pinkard, P.A.
13577 Feather Sound Drive
Suite 670
Clearwater, FL 33762
727-329-1999
Fax: 727-329-1499
Email: epinkard@floridalawpartners.com